UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

YOO SUK LEE,

                Plaintiff,

    -against-                                   **ORDER**
                                                                25 CV 206 (RER) (CLP)

LIFECARE AMBULETTE INC., *et al.*,

                Defendants.
------------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

        On January 13, 2025, plaintiff Yoo Suk Lee ("plaintiff") commenced this action against defendants Lifecare Ambulette Inc. ("Lifecare"), John Doe 1, a/k/a Sam, and John Doe 2, a/k/a Alex, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law, N.Y. Lab. L. §§ 650 et seq. ("NYLL").  (ECF No. 1).  On March 14, 2025, when defendants had failed to file an Answer or otherwise respond to the Complaint, plaintiff asked the Clerk of Court to enter a default against defendant Lifecare, which was entered on March 18, 2025.  (ECF Nos. 7, 8).

        Thereafter, on April 14, 2025, plaintiff filed his First Amended Complaint against defendant Lifecare, naming Sam Levy ("Levy") and Alex Lakhtikov ("Lakhtikov") as defendants in lieu of John Does 1 and 2 (collectively, "defendants").  ("Am. Compl."[1]).  Currently pending before this Court is defendants' letter Motion, dated April 24, 2025, to vacate the default. ("Defs.' Mot."[2]).  For the reasons set forth below, the Court grants the motion to vacate.

---

[1] Citations to "Am. Compl." refer to plaintiff's First Amended Complaint, filed April 15, 2025 (ECF No. 9).

[2] Citations to "Defs.' Mot." refer to defendants' letter Motion, dated April 24, 2025, requesting vacatur of default (ECF No. 16).

1

FACTUAL BACKGROUND

In the First Amended Complaint, plaintiff Lee alleges that defendant Lifecare is a domestic business corporation, located at 1124 Brunswick Avenue, Far Rockaway, N.Y. 11691, that provides non-emergency medical transportation services to and from healthcare facilities. (Am. Compl. ¶¶ 11-13). Defendant Sam Levy is alleged to be the owner and vice president of Lifecare, with the authority to hire, fire, supervise, and discipline the employees, and who had the authority to determine the rates of pay and control the conditions of work for plaintiff and other similarly situated employees. (Id. ¶¶ 21-31). Defendant Alex Lakhtikov is alleged to be a manager of Lifecare, who also hired plaintiff and had the authority to hire, fire, supervise, and discipline the employees, as well as the authority to determine the rates of pay and control the conditions of work of the employees. (Id. ¶¶ 32-41).

Plaintiff alleges that he was employed as an ambulette driver for defendants from December 2, 2018, through December 24, 2024. (Am. Compl. ¶¶ 8, 57, 58). Plaintiff alleges that he did not have a fixed work schedule, but was instead required to follow the daily instructions given by defendants through their dispatchers to pick up patients from their locations and transport them to designated destinations. (Id. ¶¶ 59, 60). Plaintiff claims that defendants installed video cameras in the drivers' vans to monitor whether the drivers arrived at the locations on time. (Id. ¶ 61). Since defendants did not provide the drivers with parking facilities for their vans, they were required to park their vans at their residences. (Id. ¶¶ 62, 63).

Plaintiff alleges that he and other similarly situated ambulette drivers began their day by driving from their respective homes to the first patient's location and then returning home at the end of the day after completing the final drop-off. (Id. ¶¶ 64, 65). Plaintiff claims that he recorded his trips and various daily work hours in a notebook. (Id. ¶ 66).

According to plaintiff, during his employment, he worked six days a week, with the first instructed pick-up time ranging from 4:00 a.m. to 9:00 a.m., and his last drop-off time ranging from 6:00 p.m. to 9:00 p.m. (Id. ¶¶ 68, 70). When his first pick-up time was 4:00 a.m., he would often be required to leave his home around 3:00 a.m. to be at the first patient's home by 4:00 a.m. (id. ¶ 69), and when his last drop-off was at 9:00 p.m., he often returned home at 10:00 p.m. (id. ¶ 70). Plaintiff alleges that defendants agreed to pay an hourly wage of $17 per hour and $27 per hour for overtime pay. (Id. ¶ 76).

However, plaintiff alleges that defendants repeatedly failed to pay the agreed-upon wages, and as a result, there were many times when plaintiff and other ambulette drivers received wages below the applicable federal and state minimum wages. (Id. ¶¶ 75, 77). Plaintiff also claims that he was not paid spread-of-hours pay when he worked more than ten hours in a day, and he was not given a wage notice when his wage rates changed. (Id. ¶¶ 79, 80).

According to the First Amended Complaint, plaintiff was only paid for time beginning once the patient signed into defendants' system through a tablet in the van. (Id. ¶ 72). If plaintiff arrived at a patient's home at 6:00 a.m. but the patient did not come out and sign in until 7:00 a.m., plaintiff would not be paid for the hour spent waiting, nor would plaintiff be paid if the patient failed to appear or if the dispatcher provided the wrong address. (Id.) Defendants also deducted amounts for traffic tickets from plaintiff's pay, often deducting more than the actual amount of the ticket. (Id. ¶¶ 73, 74).

In the First Amended Complaint, plaintiff brings claims under the FLSA and NYLL on behalf of himself and a proposed collective and Rule 23 Class for minimum wage and overtime violations (Counts I through IV), under the NYLL for unpaid spread-of-hours premiums on behalf of himself and a Rule 23 Class (Count V), and under the Wage Theft Prevention Act,

3

NYLL §§ 195(1), (3), on behalf of himself and a Rule 23 Class, for wage notice and wage statement violations (Count VI).

## PROCEDURAL HISTORY

On February 12, 2025, plaintiff served the initial Complaint on defendant Lifecare by delivering the Summons and Complaint to the Secretary of State of New York, Lifecare's designated agent for service of process. (ECF No. 6). The John Doe defendants were not served at that time. When Lifecare failed to file an answer or otherwise respond to the Complaint, plaintiff moved for entry of a default on March 14, 2025 (ECF No. 7), and the Clerk of Court entered a default against Lifecare on March 18, 2025 (ECF No. 8).

Following the entry of default, plaintiff filed a First Amended Complaint on April 15, 2025, substituting the full names of Sam Levy and Alex Lakhtikov for the John Doe defendants, but not altering or adding new claims beyond those alleged in the initial Complaint. (Am. Compl.). On April 22, 2025, the day after the summons was issued and before service was effected on defendants, counsel filed Notices of Appearance on behalf of all defendants, including Lifecare. (ECF Nos. 14, 15). Thereafter, on April 25, 2025, defendants submitted a letter asking the Court to vacate the previously entered default against defendant Lifecare, pursuant to Fed. R. Civ. P. 60(b)(6). (Defs.' Mot.).

DISCUSSION

A. Motion to Vacate

In moving to vacate the default previously entered against defendant Lifecare, defendants cite Federal Rule of Civil Procedure 60(b). (Defs.' Mot. at 1).

Rule 60(b), which applies to motions for relief from entry of judgment, provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence surprise, or excusable neglect; (2) newly discovered evidence . . . (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . .; or (6) any other reason justifies relief.

Fed. R. Civ. P. 60(b). However, because no default judgment had been requested or entered against Lifecare, the motion to vacate the entry of default is more appropriately considered under Rule 55(a) of the Federal Rules of Civil Procedure.

Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

5

The main factors for the Court to consider in determining whether vacatur of the default is appropriate under Rule 55 are whether the default was willful, whether a meritorious defense is present, and whether setting the default aside would prejudice the adversary. Shariff v. Amanda Realty, Inc. No. 11 CV 2547, 2013 WL 5522444 at *6 (E.D.N.Y. Sept. 30, 2013) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d at 96, and Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). Other relevant equitable factors may also be considered, including, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result. See Enron Oil Corp. v. Diakuhara, 10 F.3d at 96. The party seeking relief from an entry of default bears the burden of proof. Aetna Life Ins. Co. v. Licht, No. 03 CV 6764, 2004 WL 2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (quoting In re Martin-Trigona, 763 F.2d 503, 505 n.2 (2d Cir. 1985)). Defaults are not favored, however, and doubts are to be resolved in favor of a trial on the merits. Meehan v. Snow, 652 F.2d at 277 (citing Klapprott v. United States, 335 U.S. 601 (1949)).

B. The Parties' Arguments

In response to defendants' Motion to vacate the default against Lifecare, plaintiff argues that under Fed. R. Civ. P. 55(c) and 60(b), a party seeking to vacate a default must show good cause and provide a valid excuse for failing to respond timely to a pleading. (Pl.'s Opp.[3]). Plaintiff contends that not only have defendants failed to show good cause, but they delayed for two months after service of the original Complaint and one month after the entry of default to respond, causing undue delay. (Id.) Moreover, plaintiff argues that "the filing of a First Amended Complaint does not erase the prior default. The First Amended Complaint reasserts all

---

[3] Citations to "Pl.'s Opp." refer to plaintiff's response in opposition to defendants' request to vacate default, filed May 12, 2025 (ECF No. 17).

6

claims against Defendant Lifecare Ambulette Inc., and Plaintiffs did not waive their right to rely on the default by amended the complaint." (Id.)

Defendants did not respond to plaintiff's waiver argument but contend that in order to show "good cause," they must address "(1) the willfulness of the defaulting party; (2) the existence of any meritorious defenses; and (3) prejudice to the non-defaulting party." (Defs.' Reply[4] at 1 (quoting Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (quotations and citations omitted)). In addition, noting that defaults are generally disfavored, defendants cite cases where courts consider equitable factors, including whether the defaulting party's mistake was in good faith and whether default would cause a "'harsh or unfair result.'" (Id. (quoting Enron v. Diakhuhara, 10 F.3d at 96)). In determining whether the default was due to excusable neglect, defendants note that willfulness generally entails egregious or deliberate conduct, and prejudice typically results when the delay has caused a loss of evidence, increased difficulty in discovery, or provided a greater opportunity for fraud. (Id. (quoting cases)).

In their initial letter seeking to vacate the default, defendants note that plaintiff never applied for default judgment, nor did he mention Lifecare's default in the First Amended Complaint; the First Amended Complaint simply realleges all the claims against Lifecare that had been alleged in the original Complaint. (Defs.' Mot.).

Defendants further explain that once counsel was retained, they filed their appearance on the same day that the summons for the First Amended Complaint was issued. (Id. at 2). Defendants further explain that they did not file an answer to the original Complaint because

---

[4] Citations to "Defs.' Reply" refer to defendants' reply to plaintiff's opposition to the Motion to vacate default, filed May 21, 2025 (ECF No. 18).

7

they submitted the matter to their insurance company, which then assigned counsel. (Id.) They contend that their failure to answer was not willful, nor was it egregious or grossly negligent. (Id.) As for the other prongs of the test for vacatur, defendants argue that they have meritorious defenses – namely, that plaintiff's allegations as to hours worked and wages paid are false. (Id.) Finally, defendants argue that there is no prejudice due to delay, given that the individual defendants have just been identified in the First Amended Complaint. (Id.)

C) Analysis

Before considering the parties' arguments as to whether vacatur is warranted under the circumstances, the Court first addresses plaintiff's argument that the filing of the First Amended Complaint "does not erase the prior default." (Pl.'s Opp.). To the contrary, cases in this circuit have held that the filing of an amended complaint renders the entry of default void. See, e.g., Ramirez v. Clinton Panaderia, Inc., No. 20 CV 6143, 2023 WL 2061413, at *4 (E.D.N.Y. Feb. 17, 2023); Benavidez v. Piramides Mayas Inc., No. 09 CV 5076, 2013 WL 1627947, at *6 (S.D.N.Y. Apr. 16, 2013); Lemon Tree Dev. LLC v. Philopatyr Corp., No. 10 CV 5228, 2011 WL 6396624, at *2 (E.D.N.Y. Dec. 20, 2011). The amended complaint, as the operative pleading, "renders a prior entry of default a nullity and moots a pending motion for default judgment." Ramirez v. Clinton Panaderia, Inc., 2023 WL 2061413, at *4; see also Benavidez v. Piramides Mayas Inc., 2013 WL 1627947, at *6 (holding that the amended complaint "render[ed] the entry of default against the corporate defendants obtained on the superseded complaints of no legal consequence with respect to the amended complaints, since the corporate defendants are entitled to answer the amended complaints and, indeed, may choose to do so"); Lemon Tree Dev. LLC v. Philopatyr Corp., 2011 WL 6396624, at *2 (holding that "the caselaw teaches that, having amended the complaint and added new parties, plaintiff should not now be permitted to pursue a

8

default judgment on the original pleading. Rather, plaintiff should promptly serve the Amended Complaint on each defendant and, if that defendant fails to appear, plaintiff may then move for a default judgment against that defendant on the Amended Complaint"). "Where an amended complaint does not assert new claims against a party who is in default for failure to appear '[n]o service [of the amended complaint] is required' . . . As such, 'the amended complaint becomes the operative pleading on filing.'" Ramirez v. Clinton Panaderia, Inc., 2023 WL 2061413, at *4 (citing Fed. R. Civ. P. 5(a)(2) and Falls Lake Ins. Co. v. DNA Plumbing Contractors, Inc., No 20 CV 2798, 2021 WL 3518279, at *3 (E.D.N.Y. May 4, 2021)).

Here, plaintiff concedes that the First Amended Complaint simply "reasserts all claims" against defendant Lifecare, and does not add new claims, only new parties. (Pl.'s Opp). Thus, even though Lifecare has not been served with the First Amended Complaint, that pleading has now become the "operative pleading," rendering the earlier default a nullity.

Even if the amendment of the pleadings had not rendered the earlier default a nullity, a motion to vacate under the Federal Rules is committed to the sound discretion of the court, see Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986), and courts have held that the Rule should be liberally construed so as to do "substantial justice." See MIF Realty L.P. v. Rochester Assocs., 92 F.3d 752, 755 (8th Cir. 1996); Seven Elves, Inc. v. Eskenazi, 635 F. 2d 396, 401 (5th Cir. 1981).

The relevant inquiry for determining if a default was willful relates to the defaulting party's actions "after it became aware of the existence of the litigation or entry of default." Prestige Capital Corp. v. Fuber LLC, No. 16 CV 9577, 2017 WL 2558803, at *2 (S.D.N.Y. June 5, 2017) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142-43 (2d Cir. 2010)); In re FKF 3, LLC, v. Messer, 501 B.R. 491, 501-03 (S.D.N.Y. 2013) (finding that despite the defaulting parties'

9

admittance of awareness of the action, proper service, and the defaulting parties' failure to timely respond to the motion for default judgment, their actions, "while negligent, [did] not rise to the level of willfulness").

Willfulness is "more than mere[] neglect or carelessness." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (finding defendant's explanations for letting the case "languish" plausible and acceptable); see also Swarna v. Al-Awadi, 622 F.3d at 143 (holding that willfulness "requires something more than mere negligence, such as egregious or deliberate conduct") (internal quotation marks and citation omitted). A finding of willfulness does not require that the default occurred due to bad faith, but the default must be the "deliberate and intended consequence of movant's actions." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998)). "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse." Id.; see also Kuklachev v. Gelfman, No. 08 CV 2214, 2009 WL 497576, at *3 (E.D.N.Y. Feb. 26, 2009) (finding willfulness where defendants "took a calculated risk that the case would be resolved in their favor" and pursued insurance coverage and dismissal of plaintiffs' claim in lieu of answering another defendant's cross claims); S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998) (finding willfulness where no explanation of defendant's conduct was provided, and defendant's counsel acknowledged defendant's "outright disregard" towards warnings of default).

Although defendants' excuse that they were waiting for their insurance carrier to assign counsel would generally not suffice to show the "good cause" necessary to satisfy Rule 55(c), it appears that upon receiving service of plaintiff's request for a certificate of default, Lifecare did not deliberately ignore the matter, or let the case "languish"; instead, it appears as though

10

Lifecare was making an effort to obtain counsel, which, of course, is required for a corporate entity to appear in federal court. Moreover, once counsel was appraised of the matter, they reached out to the Court to file Notices of Appearance, the same day that the summons for the First Amended Complaint was issued. (ECF Nos. 14, 15).

Apart from willfulness, the Court is constrained to consider the two remaining factors: whether defendant has made a showing that it has a meritorious defense to the claims and whether there will be prejudice to plaintiff if the default is vacated. To demonstrate a sufficiently meritorious defense, "the defendant need not establish his defense conclusively . . . but he must present evidence of facts that, if proven at trial, would constitute a complete defense." S.E.C. v. McNulty, 137 F.3d at 740 (internal quotation marks and citations omitted). In other words, the defendant must show that there is some determination to be made by the factfinder. American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). Although the proffered defense "need not be ultimately persuasive at this stage," id., "defendants cannot simply assert in a conclusory fashion that they would prevail at trial." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4. Moreover, the defendant "need only establish a defense to at least one claim – not every claim pled in the complaint." Wildflower + Co. v. Mood Apparel, Ltd., 338 F.R.D. 192, 198 (S.D.N.Y. 2021).

As an initial matter, defendant Lifecare challenges plaintiff's credibility with respect to his claims as to hours worked and wages paid. (Defs.' Reply at 2). In addition to this issue, which can only be decided after an exchange of discovery and further proceedings, the Court has a separate concern relating to the sufficiency of the pleadings in general and whether the allegations lack the specificity required by the Second Circuit in Lundy v. Catholic Health System of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013) (requiring a plaintiff raising an

11

overtime claim under the FLSA to "allege[ ] a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours"). Although this issue has not been addressed by either party, a finding that the Complaint does not sufficiently allege an overtime claim could be considered a defense on the merits.

Finally, on the issue of delay and prejudice to the plaintiff, here, only two months passed between service of the initial Complaint and defendant's retention of counsel and Motion to vacate. At this point, given that the plaintiff has not filed any affidavits of service showing that the First Amended Complaint has been served on the now-named individual defendants, and no discovery has begun, the Court finds that the delay does not rise to the level that would warrant a finding of prejudice that would preclude vacatur.

Accordingly, given that the filing of the amended pleading renders the initial default a nullity and this Court's conclusion that vacatur of the default would be warranted in any event given the factors set out in Rule 55(c), the Court grants defendants' Motion to set aside the Clerk's entry of default and directs plaintiff to serve copies of the First Amended Complaint on the defendants.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
  December 11, 2025
/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

12